UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Fred Barnett, on behalf of himself and all others similarly situated, | Court File No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| National Football League, | |
| Defendant. | |

Plaintiff Fred Barnett on behalf of himself and all others similarly situated, by and through his attorneys, Zimmerman Reed, PLLP for this Class Action Complaint against Defendant National Football League ("NFL"), state as follows:

**NATURE OF ACTION**

1.      Plaintiff is a retired NFL football player.  Plaintiff brings this class action on behalf of himself and all retired NFL players similarly situated who have suffered injury as a result of Defendant NFL's unauthorized use of their identities, including but not limited to their names, images, and likenesses, to promote the NFL, sell NFL-related products, and otherwise generate revenue for the NFL and its member teams.

2.      For years, Defendant has earned substantial revenue by making promotional films and selling products featuring the identities of retired NFL football players, including Plaintiff.  Defendant trades on the "glory days" of the NFL as a marketing and advertising technique to convey authenticity, enhance the NFL's brand awareness and increase its revenue.  The retired players who created these glory days, however, have gone almost completely uncompensated for this use of their identities.

3.      Defendant's commercial exploitation of retired players is not only prolific, it is blatant.  One need look no further than Defendant's NFL Films website to see the names of over 450 retired players being used to advertise and sell videos promoting the NFL.

4.      Defendant's conduct has violated, and continues to violate the Lanham Act, Plaintiff's right of publicity and common laws regarding unjust enrichment.  As a result of these violations, Plaintiff now brings this class action seeking compensation for Defendant's past unauthorized use of the identities of retired NFL football players and to stop this egregious misconduct going forward.

## PARTIES

### *Plaintiff*

5.      Plaintiff Fred Barnett is a retired NFL football player and resident of Philadelphia, Pennsylvania.  Mr. Barnett played wide receiver for eight seasons in the NFL for two professional teams.  He played for the Philadelphia Eagles from 1990-95 and for the Miami Dolphins from 1996-97.  Mr. Barnett also attended Arkansas State University, where he starred for the football team, eventually becoming a third-round pick in the NFL.   Mr. Barnett was a Pro Bowl selection in 1992.  In 1994, Mr. Barnett's teammates voted him the Ed Block Courage Award recipient for his dedication to humanitarian efforts.  The NFL has used, uses, and threatens to use in the future, Mr. Barnett's name, image, and/or likeness for its own commercial benefit without authorization.

### *Defendant*

6.      Defendant NFL is a tax-exempt association under 18 U.S.C. § 501(c)(6) with its headquarters located at 280 Park Avenue, New York, NY 10017.  The NFL as a company

operates several business wings through which it, in part, carried out the misconduct described herein. These include, but are not limited to the NFL itself and doing business as NFL Properties, both located at 280 Park Avenue, New York, NY 10017; NFL Enterprises, also located at 280 Park Avenue, New York, NY 10017; NFL Films, located at 1 NFL Plaza, Mount Laurel, NJ 08054, and NFL Network, located at 10950 Wash Boulevard, Culver City, CA, 90232. Each of these business divisions operates under the exclusive control of the NFL itself. The NFL is one of the largest entertainment entities in the world with 2008 revenue totaling an estimated $6.9 billion.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1331 because this action arises under the Lanham Act, 15 U.S.C. § 1525. The Court has jurisdiction over Plaintiff's state and common law claims under 28 U.S.C. § 1967 because those claims are so related to the federal claims that they form part of same case or controversy. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d) because one or more Class members is a citizen of a state different than the state of Defendant's citizenship, there are more than 100 class members, and, on information and belief, the aggregate amount in controversy exceeds the jurisdictional amount of $5 million.

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391, certain putative class members reside in Minnesota, the causes of action for certain putative class members arise, in part, in Minnesota, and the NFL transacts business within Minnesota. In addition, the NFL has consented to venue in this district through its ongoing litigation of related claims here since 2009.

## FACTUAL BACKGROUND

### *The NFL's Use of Retired Players' Identities to Earn Revenue*

9.      The NFL's past is a key part of Defendant's present marketing and revenue-generation efforts.

10.     One of the key ways the NFL markets itself is by using its NFL Films division to trade on its past to sell products, enhance its present brand and generate revenue.

11.     NFL Films is the commercial filmmaking wing of the NFL and specializes in creating commercial and promotional films highlighting the NFL's past and featuring retired NFL players as the stars.

12.     According to NFL Films' own website, its explicit "function" is, "To *promote the National Football League* and preserve its history for generations of future fans.  To show the game, the passion and the visceral nature of the game from a player's perspective."  (emphasis added).  NFL Films, "launch[ed] pro football into the motion picture business."

13.     Sports Illustrated has called NFL Films, "the most effective propaganda organ in the history of corporate America."  The New York Times has said that NFL Films "has grown for nearly four decades into one of the great movie studios in the country… While Dreamworks or Warner puts out more blockbusters, NFL Films is as innovative as any of them."  Filmmaker John Frankenheimer said of NFL Films, "What NFL Films has done for me is to make me emotionally involved with teams I never cared about.  Even if it's a team I never heard of, I can't turn it off."

14.     The NFL Films website further touts the promotional mission of its films:

>       Unforgettable images.  Raw emotion.  Epic struggles.  Often, these
>       moments only come across on the big screen: part of a screenplay,

performed by actors on a Hollywood back lot.  NFL Films creates these same moments without re-takes, scripts or sets… just world-renowned filmmakers fusing the visceral world of pro football and the romance of celluloid.

A super slow-motion sequence of a quarterback launching a spiral through a gray November sky.  A receiver in full stride leaps to make a mid-air catch.  A defender pulls him to the ground and brings the scene to an abrupt end.  The play happens instantly.  The moments last a lifetime.

Stunning cinematography.  Exclusive all-access sound.  Stirring orchestral music.  Poignant storytelling.  These hallmarks define the NFL Films style… often imitated but never equaled.

NFL Films productions aren't just seen, they're felt.

15.     Of course, the nameless "quarterback", "receiver" and "defender" NFL Films describes as starring in its promotional, revenue-generating films are not nameless.  They are retired NFL Players and Defendant uses their names, images, and likenesses in its films to promote itself, sell products, and make money.

16.     One NFL team owner, Robert Kraft of the New England Patriots, explained the commercial value of NFL Films: "The film library, the asset base that's there, the programming… it's sort of like Beatles music or Beethoven's symphonies or Brahms.  When you and I aren't here anymore, people will still love to watch it because of the quality of it and the uniqueness and the appeal."

17.     NFL Films productions are not broadcasts, re-broadcasts, or basic accounts of NFL games.  As the NFL makes clear, "Full game prints are not available from NFL Films or any other source.  It is impossible to obtain a copy of an entire NFL game." Rather, NFL Films productions are promotional film productions with scripts, music, editing, direction and production completely independent of the play and production of the games themselves.  The NFL makes this distinction clear.  Rather than simply

showing game footage, "NFL Films goes back and looks at the story of the game.  NFL Films is interested in the struggle, not the strategy of the game.  Through editing, music and writing, NFL Films gives fans a perspective of the game that perhaps they were not aware of when they watched the broadcast on network television."

18.     The advertising and promotional intent of NFL Films has been confirmed by the NFL itself.  In 1977, NFL commissioner Pete Rozelle wrote to NFL Films founder Ed Sabol, congratulating him for "fulfilling our original goal for NFL Films – to operate it as a sound business entity, *but primarily as a promotional vehicle to glamorize the game and present it in its best light*." (emphasis added).

19.     The NFL disseminates the works of its NFL Films division several ways.  By way of example only, the NFL broadcasts NFL Films features on its own NFL Network, and for years has licensed productions to cable television stations such as ESPN, ESPN Classic, HBO, and major non-cable networks.  The NFL also sells NFL Films movies directly to consumers in catalogs, over the Internet, and at retail outlets.

20.     The NFL has realized substantial revenues from NFL Films, including but not limited to fees paid by networks to air the films, revenue from advertisements run during the broadcast of the films, sales of the films as individual products, and from the revenue generated by the realized promotional effect of the films on the NFL's brand and marketability.

21.     Using its NFL Network alone, the NFL broadcasts "hundreds of hours" of NFL Films productions and other programming featuring retired NFL players each year.  As the NFL describes it, "As a year-round channel, NFL Network will draw heavily on the resources of NFL Films and its new 200,000 square foot television and film studio

complex as well as its immense film library to produce hundreds of hours of original and class programming including, *NFL Films Presents* and *NFL Films Presents – Game of the Week in HD*, *Playbook*, *College Football Sunday*, *Football America*, *Point After*, and *Film Session*." "With more than 100 million feet of film in its library, NFL Films is the backbone of NFL Network."

22.     The NFL also sells hundreds of different NFL Films productions directly to consumers, nationally and internationally, at retail outlets, in catalogs and over the Internet at www.nflfilms.com, www.nflshop.com and through Warner Home Video at www.profootballdvd.com.  In addition to selling NFL Films, the NFL licenses NFL Films and the identities of retired NFL Players for numerous other commercial purposes.

23.     The NFL Films website currently offers hundreds of productions available for purchase for $50 each.  The NFL uses the names of specific retired NFL players to promote many of the films for sale.  On the "Special Order Catalog" portion of the NFL Films website alone, the NFL uses the specific names of over 450 retired NFL players to promote and sell NFL Films productions.  The NFL uses the names, images, and likenesses of these and hundreds of more retired NFL players on the packaging, advertising, and sales descriptions of other NFL Films productions and products available elsewhere.

24.     For example, the NFL sells an entire line of NFL Films productions under the heading "History".  This includes films for sale such as "The Fabulous Fifties, Volume II".  The NFL's sales description for this film states, "Includes Bobby Layne, the 'Alley Oop' pass, Ollie Matson, Dallas Texans/Baltimore Colts." Other films include, "NFL's Greatest Moments of the Last 25 Years", and "Sensational 60's", for which the sales

description reads, "Bucky Pope, Greg Cook, Joe Namath, George Halas, and Don Meredith."

25.     The NFL also creates an entire line of NFL Films productions for each team purporting to highlight their "complete history."  Instead of being historical pieces, however, the productions portray only the most positive aspects of a franchise through the years to paint it and the NFL in the most positive light possible.  For instance, NFL Films produced and distributed a production called "The Complete History – Philadelphia Eagles" in 1994.  Plaintiff Barnett appears as a performer in the production. The NFL also creates an entire line of NFL Films productions for each team, for each year.  Regardless of the team's performance, the productions paint the season in the most positive, promotional light possible.  NFL Films produced and distributed "Video Yearbook" productions for the Philadelphia Eagles throughout the 1990's.  Plaintiff Barnett was the team's starting wide receiver from 1990-95 and as such appears regularly in these promotional films.

26.     In addition to television broadcast and video sales, the NFL pervasively uses the Internet to broadcast and feature NFL Films productions containing the names, images, and likenesses of retired players on its website and on affiliated websites.

27.     Congress has taken note of the NFL's use of NFL player identities for promotional purposes.  In 2008, Congresswoman Linda Sanchez of California held a congressional hearing to receive testimony and analyze the widely-reported physical and economic plight of retired NFL players.  Her findings illustrated the dire situation many NFL alumni face, while NFL continues to use their likenesses to generate revenue.

28.    Congresswoman Sanchez found that, "half of all players retire because of injury, sixty percent of players suffer a concussion, at least one quarter of players suffer multiple concussions and nearly two-thirds suffer an injury serious enough to sideline them for at least half of a football season."  She also found, "The evidence suggests that the vast majority of [retired] players needing [health] benefits do not receive them.  What is even more troubling is that *through projects such as NFL Films, the NFL continues to profit off those very same players* who are denied benefits." (emphasis added).

29.    The NFL has disseminated and to this day disseminates NFL Films and other utilizations of the identities of Plaintiff and members of the Class in all fifty states and around the world on multiple television stations, including but not limited to, the NFL Network, ESPN, ESPN Classic, and HBO, and via the Internet.  The NFL has earned substantial revenue from these uses of Plaintiff's identity and has caused damage to Plaintiff and members of the Class in all of those jurisdictions.

30.    On information and belief, the NFL has sold, and to this day sells, NFL Films productions and other utilizations of the identities of Plaintiff and members of the Class to all fifty states and around the world.  The NFL has therefore caused damage to Plaintiff and members of the Class in all of those jurisdictions.

31.    The NFL has used the names, images, and likenesses of Plaintiff and members of the Class commercially on the Internet, to promote the NFL's brand, to sell products, and to otherwise increase the NFL's revenue as an independent entity and on behalf of its thirty-two member clubs.

32.    Plaintiff and all members of the Class whom the NFL has used to generate revenue are readily identifiable because they are portrayed by name, image, uniform,

number, and other unique indicia.  In addition, on information and belief, the NFL has

digitized its entire NFL Films library and archives so that Plaintiff and class members

may be searched for and isolated by year, game, team, and even player name.

**Plaintiff' Publicity Rights Are Extremely Valuable**

33.     The NFL is eminently aware of the extremely high value of the names, images

and likenesses of its players and takes extreme measures to restrict access and

dissemination of NFL player footage and images in any form.  For instance, the NFL

restricts media, including local news outlets, to showing only 45 seconds per day of

footage of NFL players shot at league or team facilities in any fashion.  This includes

*non-playing* situations such as news conferences, interviews and practice-field reports.  If

a media outlet shows any footage on its website, the NFL requires the outlet to provide

links to both www.nfl.com and to the player's NFL team's website.  The NFL bars non-

affiliated media outlets from selling any Internet advertising connected to the

presentation of NFL player footage on non-NFL affiliated websites.

34.     The NFL restriction of player images and footage is not limited to current players.

If a media outlet, such as a local news station, wishes to use footage of retired players as

part of reporting the news, it must pay the NFL steep fees.

35.     The NFL's intent in restricting public access to the names, images and identities

of its players is to drive fans and revenue to NFL owned and affiliated outlets to view

NFL images, footage and programming.  As one team spokesman, the Washington

Redskins' Chris Helein, informed the Washington Post, "There are a number of reasons

for [barring videographers], but it's basically a content issue[.]  I won't hide . . . the fact

that the NFL and everything that surrounds it is valuable content".

36.     NFL spokesman Greg Aiello further confirmed the substantial *commercial* value of footage of NFL players – wholly apart from the historical or newsworthy value of any broadcast of NFL games.  According to Aiello, the NFL restricts media access to players because:

> We're trying to balance protection of our business assets with the equally important need to receive extensive news media coverage and communicate with as many fans as possible on a regular basis.  We have no interest in controlling or limiting what news Web sites do, except limiting the use of video that undermines our own Internet operations. We have important business interests on the Internet, and we have to be careful about that.

37.     It is in part because of this extremely high value that the NFL created its own NFL Network in 2003 to drive and capture fans seeking programming related to professional football.  As the NFL describes it, "NFL Network is a melting pot of gridiron greats from the NFL's past, present and future that will sate the voracious appetites of millions of football fans across the country."

38.     Further evidence of the great value of NFL players' likenesses is found in the standard player contract for NFL players.  The NFL's standard player contracts require active players to grant the NFL the authority to use the players' names, images, and likenesses to publicize and promote the NFL.  Of course, any such assignments do not apply to retired players, as their player contracts are, by definition, no longer in force.

39.     By commercializing the names, images, and likenesses of its players, both active and retired, the NFL has become one of the largest entertainment conglomerates on the planet, raking in an estimated $6.9 billion in 2008 alone.

40.     The NFL did not begin earning billions of dollars in revenue overnight.  It began earning revenue gradually over many years with the support and sacrifice of the players

who played the game.  Those now-retired NFL players, as a group, suffer severe physical maladies and disabilities as a result of the sacrifices they made to make the NFL what it is today.  There is thus an overwhelming interest in compensating these players for the commercial use of their names, images and likenesses by the NFL.

41.    By his present Complaint, Plaintiff and members the Class seek nothing more than to obtain their fair share of the revenues the NFL has earned, and will earn, by its use of retired players' identities.  Plaintiff therefore brings this action to provide long-awaited resolution for the players that made and continue to make professional football the most popular sport in America.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff realleges all previous paragraphs as if fully stated herein.

43.    Plaintiff brings this class action on behalf of himself and all others similarly situated, for all claims alleged herein, pursuant to all applicable provisions of Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

44.    The Proposed Class which Plaintiff seeks to represent is composed of:

> All persons who played professional football for any NFL member team, who are retired or no longer active, and whose name, voice, image, likeness, or other indicia of identity has been used by the NFL to promote the NFL or any of its member teams, sell products or services, or otherwise to increase the brand awareness or obtain revenue for the NFL or any of its member teams.

45.    Alternatively, should it be found that any of Plaintiff's state law claims could not be certified on a national basis, Plaintiff seek statewide subclasses (or groups of statewide subclasses) for these same persons.

46.    Plaintiff specifically excludes from the Class the NFL and any related entities, all subsidiaries or affiliates of the NFL; any entity in which the NFL has a controlling

interest; and any and all of the NFL's employees, affiliates, legal representatives, heirs, successors or assignees.

47.    Plaintiff also specifically excludes from the Class the Judge and Magistrate assigned to this case and any member of their immediate families.

48.    As shown below, this class action satisfies all requirements under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, including but not limited to the elements commonly referred to as numerosity, commonality, typicality, adequacy and superiority.

a. **Numerosity.**  Consistent with Rule 23(a)(1) of the Federal Rules of Civil Procedure, the proposed Class "is so numerous that joinder of all members is impracticable."  On information and belief, based on information obtained from news reports in the public media and investigation of counsel, the number of members of the proposed Class is believed to exceed 10,000.

b. **Commonality.**  Consistent with Rule 23(a)(2) of the Federal Rules of Civil Procedure, the proposed Class shares "common questions of law or fact."  Defendant has engaged in a common course of misconduct toward Plaintiff and members of the proposed Class, including but not limited to using Plaintiff's name, image, and likenesses to promote the NFL commercially and to sell NFL-related products.  This common course of misconduct, resultant injury to Plaintiff and the members of the Class and the remedies available to all such persons demonstrate the propriety of class certification.

c. **Typicality.**  Consistent with Rule 23(a)(3) of the Federal Rules of Civil Procedure, the claims of the proposed Class Representative is, "typical of the claims … of the class."  Plaintiff and all members of the proposed Class who have had their

identities used by the NFL for commercial or promotional purposes have suffered damages as a result of the NFL's wrongful acts and misconduct.  The Named Plaintiff's factual and legal claims arise out of the same uniform misconduct perpetrated by Defendant in a similar manner against the members of the Class.  Thus, the evidence and legal theories underlying Plaintiff's claims are identical to those underlying the claims of all members of the putative Class.

d. **Adequacy**.    Consistent with Rule 23(a)(4) of the Federal Rules of Civil Procedure, Plaintiff "will fairly and adequately protect the interests of the class." Plaintiff has no adverse or conflicting interests to the proposed Class members. Plaintiff has retained competent counsel experienced in complex, class action litigation that possess the necessary financial resources to adequately and vigorously litigate this class action.

49.    **Predominance**. Consistent with Rule 23(b)(3) of the Federal Rules of Civil Procedure, common questions of law and fact predominate over individual issues. Common questions include but are not limited to the following:

- Did the NFL use Plaintiff's identity?

- Did the NFL use Plaintiff's name, image, or likeness to advertise and promote the NFL and otherwise for its advantage or economic gain?

- Did the NFL have Plaintiff's consent to use Plaintiff's name, image, or likeness for commercial gain?

- Are Plaintiff and the Class entitled to relief for false endorsement under § 43(a)(1)(A) of the Lanham Act?

- Are Plaintiff and the Class entitled to relief under Pennsylvania laws protecting right of publicity?

- Are Plaintiff and the Class entitled to relief under other state common and statutory law protecting the right of publicity?

- Are Plaintiff's claims barred in whole or in part by any of Defendant's affirmative defenses?

- Did Plaintiff suffer damage as a result of the NFL's use of his name, image, and likeness?

50.     **Superiority.**   Consistent with Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method of resolving this action.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for the party opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact.  Plaintiff knows of no difficulty of any kind that would make a class action in this case unmanageable.

51.     The Class also satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because, as set forth herein, Defendant has acted and/or refused to act on grounds that apply generally to Plaintiff and members of the Class, thereby warranting appropriate injunctive and/or declaratory relief respecting the Class as a whole.

52.     Proper and sufficient notice of this action may be provided to Class members through actual notice to former NFL players tracked by the NFL, among other methods.

53.     Plaintiff and members of the Class have suffered harm and damages as a result of Defendant's wrongful conduct as alleged herein.  Absent representative action, Plaintiff and the members of the Class will continue to suffer losses thereby allowing Defendant's violation of law to proceed without remedy, and allowing Defendant to retain the proceeds of its ill-gotten gains.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (False Endorsement, § 43(a) of the Lanham Act, 15 U.S.C. § 1125)

15

54.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

55.     § 43(a)(1)(A) of the Lanham Act states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof…, which-
>
> (A)      is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

56.     Defendant NFL uses the actual names of retired NFL players in promotional films, on its website to promote the League, and on its NFL Films website catalog, among other places, to identify and solicit sales of its NFL products.

57.     Defendant NFL also uses the names, images, and likenesses of thousands of retired NFL players in its NFL Films productions, among other places, for the explicit purpose of promoting the NFL, increasing its brand awareness, and driving revenue to the NFL through product sales and consumer favor of the NFL over competing entertainment options.

58.     The NFL uses the actual names of retired NFL Players in connection with product descriptions and does so for the purpose of advertising and selling specific NFL Films video and other products.  The NFL also uses the names, images, and likenesses of Plaintiff and members of the Class in connection with promoting the NFL as a specific, consumable entertainment product.

59.     The identities of the individual retired players the NFL uses to promote and sell itself and its products are recognizable to persons who consume Defendant's products.

Otherwise, the NFL would not select the individual players it does when promoting itself and its products.  In addition, pro players wear uniforms, numbers, and name plates, making them readily recognizable to consumers.

60.     The NFL's motivation in producing NFL Films and featuring the names, images, and likenesses of retired NFL players is purely economic.  The motivation is to sell NFL products, increase the NFL's brand power by trading on its past, and drive consumers to spend money on the NFL and its member teams instead of other entertainment options.

61.     NFL Films, and other uses featuring the names, images, and likenesses of retired NFL football players, are not simply news, historical, or entertainment pieces.  They are promotional pieces intended to portray the NFL, as an entertainment option, in the most positive light possible.  At no point in any NFL Films production is the NFL criticized or shown in less than a favorable, promotional light.

62.     NFL Films may not be standard 30-second television advertisements, but they are intended to, designed to, and do serve the same promotional purpose.  Similar to "infomercials," NFL Films are intended to focus consumers on the drama and intrigue of the NFL as a consumable entertainment product.  Plaintiff and members of the Class are the uncompensated stars of these promotional films.

63.     Plaintiff and members of the Class have legally protectable trademarks in their names, images, and likenesses.  Plaintiff and members of the Class own these trademarks outright.  Any assignment of such rights made, for example, in their standard player contracts, expired with the expiration of such contracts.

64.     The NFL's use of the names, images and likenesses of Plaintiff and members of the Class in its promotional NFL Films productions and other products is likely to create confusion concerning Plaintiff's sponsorship or approval of those goods or services.

65.     As a direct and proximate result of Defendant's misconduct, Plaintiff and members of the Class have suffered injury.

## SECOND CAUSE OF ACTION

### (Misappropriation of Right of Publicity, Pennsylvania Common Law)

66.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

67.     The NFL has made use and continues to make use of the identities of Plaintiff and members of the Class, for advertising purposes and for purposes of trade without first having obtained consent.

68.     The NFL has knowingly and intentionally used and continues to use the identities of Plaintiff and members of the Class, including but not limited to their names, images, and likenesses, to advertise for and promote the NFL and to solicit purchases and sell products with revenue benefiting the NFL and its member organizations.

69.     As a direct and proximate result of the NFL's improper, unauthorized use of their identities, Plaintiff and members of the Class have suffered injury.

## THIRD CAUSE OF ACTION

### (Violations of Right of Publicity, Pennsylvania Consolidated Statutes Title 42 § 8316)

70.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

71.     The NFL has made use and continues to make use of the identities of Plaintiff and members of the Class, for advertising purposes and for purposes of trade without first having obtained written consent.

72.     The NFL has knowingly and intentionally used and continues to use the identities of Plaintiff and members of the Class, including but not limited to their names, images, and likenesses, to advertise for and promote the NFL and to solicit purchases and sell products with revenue benefiting the NFL and its member organizations.

73.     As a direct and proximate result of the NFL's misappropriation of their identities, Plaintiff and members of the Class have been injured in an amount to be proven at trial, and are entitled to an injunction preventing further violations of their rights.

## FOURTH CAUSE OF ACTION

### (Violations of State Right of Publicity Statutory and Common Laws)

74.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

75.     Plaintiff and members of the Class have been, and continue to be, injured in all fifty states as a result of the NFL's misappropriation of their rights by use of the Internet, television and by other means.

76.     In addition to claims under the statutory and common laws of the states in which they reside, Plaintiff also asserts claims under the statutes and common laws of all other states where his rights, and the rights of members of the Class, were violated.

77.     Defendant has violated Arizona common law protecting the right of publicity.

78.     Defendant has violated Alabama common law protecting the right of publicity.

79.     Defendant has violated California common law protecting the right of publicity.

80.     Defendant has violated California Civil Code § 3344.

81.     Defendant has violated Connecticut common law protecting the right of publicity.

82.     Defendant has violated Florida common law protecting the right of publicity.

83.     Defendant has violated Florida Statute § 540.08.

84.     Defendant has violated Georgia common law protecting the right of publicity.

85.     Defendant has violated Hawaii common law protecting the right of publicity.

86.     Defendant has violated Illinois Rev. Stat. ch. 765 § 1075.1 *et seq.*

87.     Defendant has violated Illinois common law protecting the right of publicity.

88.     Defendant has violated Indiana Code § 32-26.

89.     Defendant has violated Kentucky Rev. Stat. §391.170.

90.     Defendant has violated Kentucky common law protecting the right of publicity.

91.     Defendant has violated Massachusetts Gen. Laws Ann. Ch. 214, § 3A.

92.     Defendant has violated Michigan common law protecting the right of publicity.

93.     Defendant has violated Minnesota common law protecting the right of publicity.

94.     Defendant has violated Mississippi common law protecting the right of publicity.

95.     Defendant has violated Missouri common law protecting the right of publicity.

96.     Defendant has violated Nebraska Rev. Stat. § 20-202.

97.     Defendant has violated New Jersey common law protecting the right of publicity.

98.     Defendant has violated New York Civil Rights Law § 51.

99.     Defendant has violated North Carolina common law protecting the right of publicity.

100.    Defendant has violated Ohio Rev. Code Ann. § 2741.01 *et seq.*

101.    Defendant has violated Ohio common law protecting the right of publicity.

102.    Defendant has violated Oklahoma Stat. tit. 12, § 1448, 1449.

103.    Defendant has violated Rhode Island Gen. Laws § 9-1-28, 9-1-28.1(a)(2).

104.    Defendant has violated Tennessee Code Ann. § 47-25-1102 *et seq.*

105.    Defendant has violated Texas common law protecting the right of publicty.

106.    Defendant has violated Texas Property Code § 26.011.

107.    Defendant has violated Utah Code Ann. § 45-3-1 *et seq.*

108.    Defendant has violated Utah common law protecting the right of publicity.

109.    Defendant has violated Virginia Code § 8.01-40.

110.    Defendant has violated Washington Rev. Code § 63.60.010 *et seq.*

111.    Defendant has violated Wisconsin common law protecting the right of publicity.

112.    Defendant has violated Wisconsin Statute § 995.50(2)(b).

113.    As a direct and proximate result of the NFL's unlawful conduct, Plaintiff and members of the Class have been injured in each of these states.

## FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

114.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

115.    Defendant has been unjustly enriched by obtaining money through unlawful means and at the expense of Plaintiff.

116.    Under common law principles of unjust enrichment, Defendant should not be permitted to retain the benefits conferred by such ill-gotten income.

117.    Plaintiff seeks disgorgement of all of monies Defendant has obtained or derived from the unauthorized use of Plaintiff's identity for promotional or commercial purposes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief against Defendant and respectfully asks the Court to:

1.    Certify a plaintiff Class as defined herein;

2.    Appoint Plaintiff Fred Barnett as Class Representative;

21

3.      Appoint Plaintiff's counsel Zimmerman Reed, PLLP as Lead Class Counsel;

4.      Award Plaintiff all damages allowed by law;

5.      Award Plaintiff equitable and injunctive relief as allowed by law;

6.      Grant Plaintiff declaratory relief as allowed by law;

7.      Award Plaintiff costs and attorneys' fees as allowed by law;

8.      Grant such other or further relief as allowed by law and as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  July 5, 2011                    **ZIMMERMAN REED, P.L.L.P.**

By: s/ J. Gordon Rudd, Jr.
Charles S. Zimmerman MN 120054
J. Gordon Rudd, Jr. MN 222082
Brian C. Gudmundson MN 336695
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone: 612.341.0400
Facsimile: 612.341.0844
Email: charles.zimmerman@zimmreed.com
Email: gordon.rudd@zimmreed.com
Email: brian.gudmundson@zimmreed.com

**ATTORNEYS FOR PLAINTIFF AND THE CLASS**